# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

SHAKHRUKH MUKHAMEDYAROV,

Petitioner,

vs.

DAVE MCDANIEL, et al.,

Respondents.

No. 26-CV-125-CJW-MAR

**ORDER**

———————————————

Petitioner Shakhrukh Mukhamedyarov's petition for writ of habeas corpus is before the Court. (Doc. 1). Respondents filed a response. (Doc. 9). For the following reasons, the Court **grants in part and denies in part** petitioner's petition for writ of habeas corpus and **orders** that respondents provide him with a bond hearing.

## I. BACKGROUND

Petitioner is a citizen of Kazakhstan. (Doc. 1-3). On January 22, 2021, he entered the United States on a student visa. (*Id.*). He did not report to start his program of study, (Doc. 12-25, at 3), and on December 9, 2021, his student visa was revoked, (Doc. 12-26). He remained in the United States. On March 30, 2023, he was issued a commercial driver's license. (Doc. 12-8, at 3). On October 10, 2025, he married a United States citizen. (Doc. 12-10, at 13).

On November 19, 2025, petitioner was driving a semi-truck through Iowa when a law enforcement officer stopped him for failing to enter a weigh station as required. (Doc. 12-25, at 2). He was issued a Notice to Appear ("NTA") charging him with remaining in the United States for a time longer than permitted. (Doc. 12-26); *see* 8 U.S.C. § 237(a)(1)(B). Immigration and Customs Enforcement ("ICE") took petitioner

into custody.  (Doc. 12-1, at 4).  On December 8, 2025, his wife filed an I-130, petition for alien[1] relative, on his behalf.  (Doc. 1-5).  On December 18, 2025, an immigration judge denied his request for bond, stating:

> The Court would find that the respondent is a flight risk and no amount of bond would alleviate this risk.  The respondent has been in the United States for a short period of time.  He has very little ties to the United States.  There is no relief filed before the court.  Based on statements from DHS, there is an I-589 pending, but the Court has no information about the claims and validity of those claims.  The respondent claims he is married very recently to a United States citizen, but the petition was not presented to the Court as evidence to determine likelihood of success and therefore flight risk.  As such, the Court finds that he is also a flight risk.

(Docs. 1-8; 12-2).  On January 22, 2026, an immigration judge again denied petitioner's request for bond, finding "[t]he Court already determined bond in this case and does not see any changed circumstances warranting a new bond hearing."  (Docs. 1-9; 12-3).

On May 28, 2026, petitioner filed the instant petition along with Exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10.  (Docs. 1 through 1-11).  On June 17, 2026, respondents filed a response along with a declaration from Lanette Hernandez and Exhibits A, B, C, D, E, F, G, H, I, and J.  (Docs. 9, 12-1 through 12-26).  Petitioner remains detained at the Harden County Correctional Center.  (Doc. 1-11).

## II.    LEGAL STANDARD

"Habeas is at its core a remedy for unlawful executive detention."  *Munaf v. Green*, 553 U.S. 674, 693 (2008).  Habeas corpus relief is available to those "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c).  The right to challenge the legality of a person's confinement "through a

---

[1] The United States Code and the accompanying federal regulations use the term "alien."  The Eighth Circuit did the same in *Ali*.  770 F. App'x 298 (8th Cit. 2019).  To maintain consistency with the statutory and regulatory text, the Court will use the same term in this Order.

petition for a writ of habeas corpus . . . extends to those persons challenging the lawfulness of immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2022) (citing *Presider v. Rodriguez*, 411 U.S. 475, 485 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); and *Demore v. Kim*, 538 U.S. 510, 517 (2003)). The petitioner bears the burden of proving by a preponderance of the evidence that their detention is unlawful. *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025); *Walker v. Johnston*, 312 U.S. 275, 286 (1941); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("[T]he burden of proof under § 2241 is on the prisoner."); *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (stating that the burden of proof was upon the petitioner).

### III.    DISCUSSION

Petitioner argues that his detention violates the Due Process Clause due to (1) the allocation of the burden of proof and (2) his prolonged detention. Petitioner also argues (3) that respondents have violated the Suspension Clause.

#### A.    *Due Process Clause Argument*

First, petitioner argues that the Due Process Clause requires the burden of proof at a bond hearing must be placed on the government. (Doc. 1, at 11). Respondents argues, first, that petitioner has failed to exhaust his administrative remedies by not appealing to the Board of Immigration Appeals ("BIA"). (Doc. 9, at 5-8). Respondents then argue that petitioner "does not have a due process right to shift the burden of proof." (*Id.*, at 9). Rather, according to respondents, "[p]etitioner has received the process to which he is constitutionally entitled." (Doc. 9, at 13).

Regarding the exhaustion argument, immigration judges and the BIA lack jurisdiction to hear constitutional challenges against their agency's own statutes and regulations. *See Matter of C-*, 20 I. & N. Dec. 529, 532 (BIA 1992) ("It is settled that the immigration judge and this Board lack jurisdiction to rule upon the constitutionality

Case 1:26-cv-00125-CJW-MAR    Document 14    Filed 06/30/26    Page 3 of 7

of the Act and the regulations."). The immigration court's own regulations require petitioner to bear the burden of proof. 8 C.F.R. §§ 236.1(c)(8) & 1236.1(c)(8) ("[T]he alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."). Thus, given that any additional filings in the immigration courts would not address petitioner's claim, this Court finds that there is no exhaustion requirement here, and the Court proceeds to the merits of the due process claim.

Regarding the allocation of the burden of proof under the Due Process Clause argument, the Eighth Circuit has expressed uncertainty about petitioner's claim:

> To begin with, we are skeptical of Ali's argument that his detention pending a decision on whether he is to be removed under § 1226(a) is unconstitutional considering he was given a bond hearing and still has available procedural avenues to seek relief. *See* 8 C.F.R. §§ 236.1(c)(8) and (d), 1003.19, 1236.1(d). The Supreme Court has never indicated the bond hearing process set forth in the statute and accompanying regulations is constitutionally deficient. To the contrary, Supreme Court precedent indicates such a framework is constitutionally permissible. *See Demore v. Kim*, 538 U.S. 510, 523 . . . (2003) (explaining "this Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process"); *United States v. Salerno*, 481 U.S. 739, 748, 755 . . . (1987) (holding the Bail Reform Act of 1984 did not facially violate the Due Process Clause of the Fifth Amendment and, noting in support of its conclusion, it had previously "found no absolute constitutional barrier to detention of potentially dangerous resident aliens pending deportation proceedings"). Indeed, we find it noteworthy that aliens challenging the constitutionality of their detentions in *Jennings* and *Demore* sought, as a remedy, a bond hearing similar to what Ali was given. *See* [*Jennings v. Rodriguez*, 538 U.S. 281, 290 (2018)]; *Demore*, 538 U.S. at 517[.]

*Ali v. Brott*, 770 F. App'x 298, 301 (8th Cit. 2019). And the Supreme Court stated in reference to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is

4

necessary " that "[n]othing in § 1226(a)'s text—which says only that the Attorney General 'may release' the alien 'on . . . bond'"—even remotely supports the imposition of either of those requirements." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).

Post-*Ali*, however, a sister district court summarized that "[i]n *Ali*, the Eighth Circuit determined that petitioner's detention under § 1226(a) was reasonable because of the availability of a bond hearing. The court did not, however, weigh in on whether placing the burden of proof at a bond hearing on the detainee was constitutionally permissible." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 904 (D. Minn. 2020) (internal citation removed). Thus, without guidance on point, courts have ordered the burden shifted to the government at a subsequent bond hearing. *Ermekov v. Mullin*, No. C26-41-LTS-KEM, 2026 WL 1046766, at *3 (N.D. Iowa Apr. 17, 2026) (stating that if the government wishes to redetain petitioner it "will be required to prove by clear and convincing evidence that [he] poses a flight risk or danger to the community"); *Calvette Chirinos v. Olson*, No. 26-cv-369, 2026 WL 1724667, at *7–8 (E.D. Wis. June 12, 2026) ("a hearing that is structurally unfair would violate due process").

This Court has taken that approach in previous cases. *See* Order, *De la luz Baez v. Mullin*, No. 26-cv-72 (N.D. Iowa June 2, 2026), Dkt. No. 28; Order, *Martin Martin v. Mullin*, No. 26-cv-92 (N.D. Iowa May 26, 2026), Dkt. No. 14; *Gomez Blanco v. Noem*, No. 26-cv-61 (N.D. Iowa April 28, 2026), Dkt. No. 15; *Muse v. Mullin*, No. 26-cv-4024 (N.D. Iowa April 14, 2026), Dkt. No. 14. Here, the Court finds that, for the same reasoning as in those cases, respondents must provide petitioner with a bond hearing at which the government bears the burden demonstrate petitioner's dangerousness or flight risk. Petitioner's petition is **granted** as to that request. His alternative argument for immediate release is **denied**.

The Court likewise **denies** petitioner's request for relief based on any claimed defect in the second bond hearing. See (Doc. 1, at 18). An alien may request a

subsequent bond redetermination by an immigration judge "upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e). Here, petitioner has not argued any meaningful change to his circumstances even before this Court. Rather, his claim is based on the procedure in the first bond hearing. Thus, given that the Court has already granted petitioner's request, the Court does not address his subsequent bond hearing claim. Likewise, the Court does not address any claimed issues with the factual findings of the immigration judge. *See* (Doc. 1, at 17–18). If petitioner wishes to challenge those factual findings, he may appeal to the BIA, which does have authority to review an immigration judge's determinations. *See* 8 C.F.R. §§ 236.1(d)(2), 1003.38. His claim for relief is **denied** on that ground.

### B.      *Suspension Clause Argument*

Last, petitioner argues "The administrative process afforded to [him] has not provided a meaningful test of the legality of his confinement." (Doc. 1, at 25). Respondents answer that "[t]he Court should summarily reject Petitioner's Suspension Clause argument." (Doc. 9, at 13).

The Suspension Clause provides: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I § 9, cl. 2. The Supreme Court has found that when Congress enacted a statute which eliminated recourse to habeas corpus as a means to assert cognizable constitutional rights in the federal courts, that statute violated the Suspension Clause. *Boumediene v. Bush*, 553 U.S. 723, 795 (2008) (citing the language from the relevant statute preventing courts, justices, and judges from considering applications for a writ of habeas corpus). In reaching that conclusion, the Supreme Court found that because the statute "denies the federal courts jurisdiction to hear habeas corpus actions pending at the time of its enactment," the statute impermissibly suspended the writ. *Id.* at 736; *see also Dep't of Homeland Sec'y v. Thuraissigiam*, 6591 U.S. 103,

6

(2020) (reviewing the effect of the Illegal Immigration Reform and Immigrant Responsibility Act on the writ and finding that "[t]he writ simply provided a means of contesting the lawfulness of restraint and securing release" in the federal courts). In other words, for a Suspension Clause violation, the action must impede a petitioner's ability to seek habeas corpus relief in federal court.

Here, petitioner does not claim that his access to the writ of habeas corpus has been denied. He does not point to a statute that has prevented this Court from reviewing his petition, nor has he claimed any impediment to his ability to present his petition before this Court. Rather, petitioner is presenting his claims to this Court through the mechanism of habeas corpus, which the actions of ICE and the immigration judge have left untouched. He does not need a substitute for habeas corpus because he has been able to effectively present his petition for relief, thus, there has been no violation of the Suspension Clause here. The Court **denies** petitioner's request for habeas corpus relief as to this final ground. The Court also **denies** declaratory relief.

## IV. CONCLUSION

For those reasons, petitioner's petition for writ of habeas corpus (Doc. 1) is **granted-in-part and denied-in-part**. The Court hereby orders that within fourteen (14) days of the date of this order respondents provide petitioner an individualized bond hearing before an immigration judge at which the government bears the burden to demonstrate petitioner's dangerousness or flight risk.

**IT IS SO ORDERED** this 30th day of June, 2026.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa

7